FERGUSON and others, Plaintiffs and Appellants, v. CITY OF KENOSHA, Defendant: STATE AERONAUTICS COMMISSION and others, Defendants and Respondents.

*November 7—December 2, 1958.*

For the appellants there was a brief by *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha, and oral argument by *William A. Sheldon.*

For the respondents there was a brief by the *Attorney General* and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert* and by *Mr. A. J. Feifarek,* assistant attorney general.

CURRIE, J.   The principal issues on this appeal are:

(1) Is the appeal procedure provided in the condemnation statutes the plaintiffs' exclusive remedy to raise the issues attempted to be stated in plaintiffs' complaint?

(2) Does sec. 3a, art. XI, Const., bar the acquisition of lands by the state, or any agency or political subdivision thereof, for airport purposes through the exercise of the power of eminent domain?

(3) In any event, was a jury determination of necessity required by sec. 2, art. XI, Const., as a condition precedent to the defendant commission entering the condemnation awards as to plaintiffs' lands?

With respect to the first enumerated issue, counsel for the defendants maintain that the present separate suit in equity by the plaintiffs will not lie.  They cite *Klump v. Cybulski* (1957), 274 Wis. 604, 81 N. W. (2d) 42, and *Kultgen v. Mueller* (1958), 3 Wis. (2d) 346, 88 N. W. (2d) 687, in support of such contention.

By sec. 114.33 (7), Stats., the State Aeronautics Commission is given the same powers of condemnation as possessed by the state highway commission under sec. 84.09 (2), which latter statute is the one under which the highway commission had proceeded in the *Kultgen Case.*

The *Klump* and *Kultgen Cases* hold that a property owner can challenge any failure of the condemnor to observe initial statutory procedures in an eminent-domain proceeding at the stage in the proceeding when such owner appeals to the circuit court, and that the issues on such appeal are not limited solely to determining the amount of damages for the taking to be awarded to the landowner. It necessarily follows from the holdings in such two cases that the issue of constitutionality of the eminent-domain statute under which the condemnor is proceeding can also be raised at this same appeal stage of the condemnation proceeding. The plaintiffs in the instant case could have appealed the initial awards to the county judge pursuant to sec. 84.09 (2), Stats., and then appealed from his determination to the circuit court as provided in sec. 83.07 (5). At such latter stage of the proceedings, when the matter would be pending before circuit court, the plaintiffs could then raise the issue of constitutionality as well as failure to comply with constitutional or statutory procedural requirements.

However, the fact that a legal remedy exists whereby the plaintiffs might have raised their objections to the taking does not necessarily exclude a court of equity of jurisdiction to grant a remedy such as injunction. The existence of such remedy at law does not deprive equity of jurisdiction unless such remedy is adequate. *Bergman v. Bernsdorf* (1955), 271 Wis. 401, 407, 73 N. W. (2d) 595, 74 N. W. (2d) 744. The legal remedy is never adequate if the injured party will sustain irreparable damage by being forced to resort thereto even though he may ultimately prevail. As the United States supreme court well stated in *Vicksburg Waterworks Co. v. Vicksburg* (1902), 185 U. S. 65, 82, 22 Sup. Ct. 585, 46 L. Ed. 808:

"But it is one of the most valuable features of equity jurisdiction, to anticipate and prevent a threatened injury, where the damages would be insufficient or irreparable."

The instant complaint alleges that the defendants are about to enter upon the plaintiffs' farmlands and remove the buildings and substantial portions of the topsoil. If the plaintiffs are denied equitable relief and are forced to first appeal the awards to the county judge and then to the circuit court before they can raise their objections to the taking, their remedy would be to get back their lands with the buildings and topsoil gone and to recover damages for the removal thereof. Acts which destroy, or result in a serious physical change in, property constitute irreparable injury. *Lackaff v. Bogue* (1954), 158 Neb. 174, 185, 62 N. W. (2d) 889, 897; 43 C. J. S., Injunctions, p. 448, sec. 23b. We are satisfied that the instant complaint alleges a cause of action for equitable relief because of the allegations of facts establishing irreparable injury if the plaintiffs are forced to resort to their remedy at law. However, this cause of action in equity only extends to the issues of the application of sec. 3a, art. XI, and sec. 2, art. XI, Const., and not to the issue of whether the defendant commission attempted to negotiate in good faith for the purchase of plaintiffs' lands before recording the awards. As to such latter issue, the plaintiffs' remedy of appeal to the circuit court in the condemnation proceeding is an adequate remedy for reasons hereinafter stated.

This court, in its opinion in *Klump v. Cybulski, supra,* was careful to point out that the condemnor utility company did not propose to work any alteration in the plaintiff's premises, but merely to string power lines over it at a height of 48 feet above the surface of the ground. In light of this, the opinion stated (274 Wis. at p. 611):

"In such a situation irreparable injury in the interval pending determination of an appeal from the award is not to be presumed where not proved to be likely."

In *Kultgen v. Mueller, supra,* the plaintiffs' premises had been taken possession of and devoted to state trunk highway

purposes following the recording of the condemnation award. The plaintiffs, by their action in equity, sought to set aside the award because of the failure of the Wisconsin highway commission and the county highway committee to have first negotiated in good faith for the purchase of the lands covered by the award. In such a situation it would be impossible for the plaintiffs to have made the required showing of irreparable damage essential for equity taking jurisdiction. The statutory legal remedy of appeal was adequate because there was no likelihood of the plaintiffs recovering possession of their lands. This is because, if on appeal the proceedings would be held to be void for procedural defects so that the highway committee failed to initiate valid condemnation proceedings, the court pursuant to sec. 32.15 (1), Stats., might, and undoubtedly would, have permitted the highway committee to continue in possession until valid condemnation proceedings had been initiated. The plaintiffs in the instant case might well find themselves in the same position, if their sole ground of attack were the failure of the Aeronautics Commission to have negotiated in good faith for the purchase of plaintiffs' lands.

However, if in the instant action the plaintiffs might prevail on the constitutional issues raised there would be a probability of their recovering permanent possession of their property. It is this factor coupled with the further probability that, if the plaintiffs did recover such possession, the buildings and topsoil might have already been removed, which spells out a cause of action for equitable relief. Therefore, the trial court did have jurisdiction to pass upon the merits of the constitutional issues raised, and it was error to have sustained the defendant commission's demurrer on the ground that the court did not have jurisdiction of the subject of the action. Such ground of demurrer was not directed solely to the third cause of action of the complaint,

which alleged the failure to negotiate in good faith, but to the whole complaint.

We turn now to the question of whether sec. 3a, art. XI, Const., prohibits either the state or a city in exercising the power of eminent domain in order to acquire land for airport purposes. The portion of such constitutional provision material to the instant appeal reads as follows:

"The state or any of its counties, cities, towns, or villages may acquire by gift, dedication, purchase, or condemnation lands for establishing, laying out, widening, enlarging, extending, and maintaining memorial grounds, streets, highways, squares, parkways, boulevards, parks, playgrounds, sites for public buildings, and reservations in and about and along and leading to any or all of the same; and after the establishment, layout, and completion of such improvements, may convey any such real estate thus acquired and not necessary for such improvements, with reservations concerning the future use and occupation of such real estate, so as to protect such public works and improvements, and their environs, and to preserve the view, appearance, light, air, and usefulness of such public works."

The right of eminent domain is inherent in sovereignty and exists in a sovereign state without any recognition in its constitution. Therefore, it does not depend for its existence on a specific grant in the constitution. *Muscoda Bridge Co. v. Worden-Allen Co.* (1928), 196 Wis. 76, 86, 219 N. W. 428. Counsel for the plaintiffs concede the general correctness of these principles but contend that sec. 3a, art. XI, Const., has placed limitations upon the state's inherent power of eminent domain. Because airports are not listed among the specifically enumerated purposes stated in such section, it is argued that the rule of construction of *"expressio unius est exclusio alterius"* is applicable. We do not deem such rule of construction should be invoked where the result will be to limit the plenary power of the legislature by implica-

tion. *State ex rel. Milwaukee v. Circuit Court* (1958), 3 Wis. (2d) 439, 445, 88 N. W. (2d) 339; *Cutts v. Department of Public Welfare* (1957), 1 Wis. (2d) 408, 417, 84 N. W. (2d) 102; and cf., *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 53, 72 N. W. (2d) 577.

Sec. 3a, art. XI, Const., was before this court for construction in *State ex rel. Thomson v. Giessel, supra,* and it was found that it was adopted as an amendment to the constitution in 1912 in order to specifically cope with the problems of excess condemnation. See also a note with respect to such section appearing in Wis. Anno. (1930), pp. 112, 113.

The acquisition of lands, or rights of way, for sewers and sewerage systems is not one of the enumerated public purposes stated in sec. 3a, art. XI, Const. To carry the argument advanced by plaintiffs' counsel to its logical conclusion, would result in the absurd conclusion that neither the state, nor any of its agencies or political subdivisions, has any power to exercise eminent domain for such purpose.

We hold that sec. 3a, art. XI, Const., is not a limitation upon the state's inherent power of eminent domain. Therefore, the legislature has it within its power to authorize any state agency or political subdivision to condemn lands, or interests therein, for any public purpose. An airport to be opened to general public use, as must be one constructed with public funds, qualifies as such a public purpose.

There remains for disposition the issue of whether sec. 2, art. XI, Const., required a jury determination of the necessity of the taking as a condition precedent to the defendant commission recording its condemnation awards against the lands of the plaintiffs. Such section provides:

"No municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established by the verdict of a jury."

Counsel for the plaintiffs maintain that under the allegations of the complaint, the truth of which is admitted by the demurrers, the defendant commission was acting as the agent of the defendant city in making the awards and therefore the above-quoted constitutional provision is applicable. However, the complaint also states that such awards "were alleged to be under and pursuant to the terms and conditions of section 114.33 (6), Wisconsin Statutes of 1957."

The requirement of sec. 2, art. XI, Const., of a jury determination of necessity has been held by this court not to apply to quasi-municipal corporations such as counties. *State ex rel. Bare v. Schinz* (1927), 194 Wis. 397, 216 N. W. 509. We deem that the reasoning underlying such holding is determinative of the issue now before us. Mr. Justice DOERFLER, in the opinion of the court in *State ex rel. Bare v. Schinz, supra,* pointed out the underlying reason why the framers of the constitution inserted into the constitution the requirement of a jury determination of the necessity of the taking in condemnation proceedings instituted by a municipal corporation. This was because cities and villages are incorporated mainly for the interest, advantage, and convenience of the people in a special locality. Therefore, the framers feared that condemnation by a city or village might be instituted for the particular advantage of such special group, and that citizens whose property was involved in the attempted taking should have the protection of a jury finding of necessity. On the other hand, as stated in the opinion (p. 400), a county "is a governmental agency of the state, performing primarily the functions of the state locally." Therefore, when counties exercise the power of eminent domain it will not likely be undertaken for the benefit of a special few. Because of this, it was held that the provision of sec. 2, art. XI, Const., was not intended by the framers to apply to counties.

Sec. 114.33, Stats., was originally enacted in 1953 for the purpose of spelling out the mechanics of establishing or improving airports which are to be partially financed through federal and state aid, or state aid alone. Sub. (2) of such statute provides that, in order for a municipality such as the defendant city to initiate such a project, a petition must be filed with the State Aeronautics Commission. Such subsection requires that the commission then hold a hearing upon the petition after giving at least ten days' notice by registered letter to the petitioner and to all others by newspaper publication. Sub. (3) provides that if the commission shall make a finding favorable to the project, such finding must be approved by the governor before it is effective. Such subsection further provides, *"Such finding shall constitute approval of the airport site so specified as a portion of the state airport system."* (Italics supplied.)

Subs. (6) to (12) of sec. 114.33, Stats., were added to the statutes by ch. 315, Laws of 1957. Sub. (6) authorizes the Aeronautics Commission to acquire title to lands by gift, devise, purchase, or condemnation, which are required for the construction of an airport, or enlargement thereof, where the project has been approved as required by sub. (3). Sub. (7) confers the same powers of condemnation upon the commission as the state highway commission possesses under sec. 84.09 (2). Sub. (11) authorizes the commission, subject to the approval of the governor, to convey title to any lands so acquired to the local municipality which is sponsoring the airport project.

Therefore, when the complaint alleges that the defendant commission purported to record the condemnation awards against the plaintiffs' lands pursuant to sub. (6) of sec. 114.33, Stats., we must assume that the required preliminary steps had been duly complied with. These embrace the filing of a proper petition by the defendant city with the commis-

sion for approval of the project, including a description of the location of the airport site; a hearing held thereon after first giving of the required notice by publication of such hearing; and the entry of a proper finding, approved by the governor, that the proposed airport constitutes part of the state airport system. This is because of the presumption of regularity which attaches to the acts of public officers and boards. *Boles v. Industrial Comm.*, ante, p. 382, 92 N. W. (2d) 873; *State ex rel. Nelson v. Rock County* (1955), 271 Wis. 312, 316, 73 N. W. (2d) 564; and *Bohn v. Sauk County* (1954), 268 Wis. 213, 219, 67 N. W. (2d) 288.

In an apparent effort to rebut such presumption, the complaint alleges upon information and belief that such preliminary steps required by subs. (2) and (3) of sec. 114.33, Stats., were not had in the instant case with respect to Kenosha's proposed municipal airport. This court takes judicial notice of the fact that the records in the office of the State Aeronautics Commission disclose whether or not there has been compliance with the statutory procedure set forth in subs. (2) and (3) of sec. 114.33 with respect to any airport in the state. In those cases where notice of a hearing with respect to any airport petition has been had, proof of such publication is filed in the commission's records. An allegation or denial based upon information and belief with respect to any matter of public record is a nullity. *Wisconsin P. & L. Co. v. Berlin Tanning & Mfg. Co.* (1957), 275 Wis. 554, 558, 83 N. W. (2d) 147; *Mineral Point v. Davis* (1948), 253 Wis. 270, 274, 34 N. W. (2d) 226; and 2 Callaghan's, Bryant, Wisconsin Pleading and Practice (3d ed.), p. 313, sec. 19.31.

The procedural requirements of subs. (2) and (3), sec. 114.33, Stats., which must be complied with before the Aeronautics Commission can institute condemnation proceedings, reasonably insure that the necessity of the taking will be approached from the standpoint of state-wide public

purpose rather than special benefit to a particular local community. Even though the defendant city may have requested that the commission institute the condemnation proceeding in the city's behalf, no jury finding of necessity should be required under the reasoning of the opinion in *State ex rel. Bare v. Schinz, supra.* Therefore, we find that subs. (6) to (12) of sec. 114.33, enacted by ch. 315, Laws of 1957, are not unconstitutional in failing to impose a requirement of such a jury finding of necessity of taking before the Aeronautics Commission may proceed with condemnation proceedings to acquire lands for a municipal-airport project which has received prior approval of the commission and governor after due hearing. Sec. 2, art. XI, Const., has no application to the condemnation proceedings instituted by the defendant commission in the instant case.

*By the Court.*—That part of the order that sustained the demurrer, which was interposed by the defendant commission, on the ground that the court did not have jurisdiction of the subject of the action, is reversed; but in all other respects the order is affirmed. No costs shall be taxed by or against the defendant commission.

BROWN, J., took no part.